## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| WILLIE JOHNSON, | : | Case No. 1:22-cv-00031 |
| | : | |
| Plaintiff, | : | District Judge Jeffery P. Hopkins |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| WILLIAM COOL, et al., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights action under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution to challenge the conditions of his confinement during a 21-day period when he was placed in a dry cell after allegedly ingesting drugs. Plaintiff has sued four employees of the Southern Ohio Correctional Facility ("SOCF"): (1) former Deputy Warden of Operation ("DWO") William Cool; (2) DWO designee investigator Fred Denney; (3) Health Care Administrator ("HCA") B. Goodman; and (4) Administrative Licensed Practitioner ("ALP") and Nurse David Conley. Plaintiff also sued several "John Doe" lieutenants and correctional officers, who were never named or served.

This matter was referred to the undersigned Magistrate Judge to issue a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. No. 32.) For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** the

Motion in its entirety, award summary judgment to Defendants Cool, Conley, Denney and Goodman, and **DISMISS** Plaintiff's claims against them with prejudice.

## I.      APPLICABLE LEGAL STANDARDS

### A.      Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law." *Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id*.

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely disputed, then it must support its assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). The Court may only consider ***admissible*** evidence, which does not include unsworn statements. Fed. R. Civ. P. 56(c)(2) & (4); *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847 (6th Cir. 2010). Notably, a plaintiff's *pro se* status does not exempt him from his burden to respond with admissible evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, "a prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment . . . even if the record lacks corroborating

2

evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *see also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) ("[I]f the assertions in [the plaintiff's] sworn affidavit are true, they would at least create a dispute of fact . . . "). The Court is not required, however, to consider portions of affidavits or declarations that constitute inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022). However, when asserting qualified immunity at the summary-judgment stage, a defendant is relieved of the threshold burden on that issue, and the plaintiff must instead affirmatively prove that the defendant *is not* subject to qualified immunity. *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party does not either properly support its assertions of fact or address the moving party's assertions of

fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id*. (internal citations omitted).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

**B.     Section 1983 Claims**

Plaintiff brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 authorizes lawsuits "against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a

4

plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original). Allegations that a defendant was present are insufficient; the complaint must identify one or more unconstitutional actions taken by that individual defendant. *Id*.

Also, to the extent that Plaintiff is seeking to hold a Defendant who is a supervisor liable for the acts of his or her subordinates, he "must show that [the supervisor] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021); *see Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."). Plaintiff must also plead and prove that there is a "causal connection" between the allegedly unconstitutional active behavior and Plaintiff's injuries. *Crawford*, 15 F.4th at 761-62.

## II.     EVIDENCE AND FACTS

### A.     Evidence Submitted By The Parties

Plaintiff's Complaint is verified under penalty of perjury. (Doc. No. 9, PageID 90.) The factual averments in the Complaint therefore may constitute admissible evidence

5

and will be considered as if they were set forth in a declaration.[1] The Court will also consider the exhibits attached to the Complaint, which are authenticated therein. The Court will not consider any legal conclusions or inadmissible evidence in the Complaint.

Defendants submitted Plaintiff's institutional medical records ("Med. Records," Doc. No. 32-1), a watch log documenting Plaintiff's period in the dry cell ("Watch Log," Doc. No. 32-2), a conduct report and related documents concerning Plaintiff's alleged receipt of drugs ("Conduct Docs.," Doc. No. 32-4), and documents related to various Informal Complaint Resolution ("ICR") and Notice of Grievance ("NOG") forms ("Grievance Docs.," Doc. No. 32-5.) These documents are appropriately authenticated as business records. (*See* Declaration of Joshua Embrey, Doc. No. 32-3; Declaration of Brandi Trelka, Doc. No. 32-4, PageID 503-04; Declaration of Kevin Parker, Doc. No. 32-5, PageID 513-15.)

In response to Defendants' Motion for Summary Judgment, Plaintiff submitted ten exhibits (Doc. Nos. 39-1 to 39-10).

Plaintiff's Exhibit A (Doc. No. 39-1) consists of three letters to Plaintiff from various legal organizations, declining to represent him in this matter.

Plaintiff's Exhibit B (Doc. No. 39-2) contains a list of numbers associated with various grievances and kites that Plaintiff states he filed. (*Id*. at PageID 876. *See* Doc. No. 39, PageID 868 ("For the kites and ICR's I wrote . . . I have just [written] the numbers

---

[1] The factual averments in the Complaint are truncated because they apparently begin on page 3, which is missing. (*See* Doc. No. 9, PageID 81-82.)

down.").) Plaintiff's Exhibit B also contains an unsigned declaration of "M. Lee." (Doc. No. 39-2, PageID 877-78.)

Plaintiff's Exhibits C (Doc. No. 39-3), Exhibit D (Doc. No. 39-4), Exhibit F (Doc. No. 39-5),[2] Exhibit G (Doc. No. 39-6), Exhibit H (Doc. No. 39-7), Exhibit I (Doc. No. 39-8) and Exhibit K (Doc. No. 39-10) consist of copies of kites, ICRs, NOGs and related documents. Plaintiff's Exhibit J (Doc. No. 39-9) is a duplicate of the August 11, 2020 ICR attached to the Complaint.

### B. Statement of Facts

The following facts are taken from the admissible evidence in the record and are construed in the manner most favorable to Plaintiff, as the non-moving party.

### 1. December 30, 2019-January 21, 2020

On December 30, 2019, Plaintiff received a visitor. (Conduct Docs., Doc. No. 32-4, PageID 476.) During the visit, SOCF staff observed Plaintiff pouring liquid between his cup and his visitor's cup, as well as soaking paper towels in the beverages, removing the paper towels, and drinking from the cups. (*Id.*) Finding this behavior suspicious, SOCF staff investigated further. (*Id.* at PageID 477-80.) Plaintiff subsequently made incriminating statements on the prison's recorded phone lines. He also tested positive on January 4 and January 6 for methamphetamine and amphetamine. (*Id.* at PageID 488-90, 500, 502.) SOCF staff concluded that he had ingested illegal drugs. (*Id.* at PageID 482.)

---

[2] There is no Exhibit E.

Because he was suspected of "swallowing contraband," Plaintiff was placed in a "dry cell" or "dry cage" with no running water on December 30, 2019. (Conduct Docs., Doc. No. 32-4, PageID 491-92.) His "precaution level" was "constant," meaning that he was subject to "[c]ontinuous, uninterrupted observation with documentation at staggered intervals not to exceed every 15 minutes." (Watch Log, Doc. No. 32-2, PageID 406.)

Plaintiff was not permitted to shower unless authorized in writing by a mental health clinician. (Watch Log, Doc. No. 32-2, PageID 406.) It is undisputed that Plaintiff was not permitted to shower during the 14-day period from December 30, 2019 to January 12, 2020. Plaintiff took daily showers between January 13 and January 21, 2020, when he was moved out of the dry cell. (Med. Records, Doc. No. 32-1 at PageID 201, 226, 239, 265, 276, 315, 338, 347, 381 ("Infirmary Activity: Bathing: Shower – Self")).

Plaintiff complains that while he was in the dry cage, he did not have access to a "shower, water to wash his hands, sanitizer wipes, a mattress, undergarments, and his medication for his eczema." (Complaint, Doc. No. 9, PageID 82.) He had to "urinate in a plastic bottle container and defecate in a plastic, portable toilet chair, in which a clear plastic bag was placed over and in the seat to collect [his] stool to be searched for drugs." (*Id*.) Plaintiff complained repeatedly about these conditions. (*Id*. at PageID 83.)

At some point in time, Defendant Cool arrived and Plaintiff asked for a shower. Defendant Cool stated: "When you give me the drugs, I'll give you a shower." (Complaint, Doc. No. 9, PageID 82.) Plaintiff protested that he was entitled to a shower, but Defendant Cool refused and walked away. (*Id*. at PageID 82-83.) Plaintiff also complained about the lack of a shower to Defendant Denney, who checked daily to see if

8

there were any drugs in his stool. Defendant Denney allegedly laughed and said: "Mr. Cool said no showers." (*Id*.)

Plaintiff "complained about his conditions to the first, second, and third shift John Doe(s) [correctional officers] who watched him on Defecation Watch and all of them stated: 'Mr. Cool and Denney said you get nothing until you give up the drugs.'" (Complaint, Doc. No. 9, PageID 83.) After seven days, Plaintiff was still "deprived of a shower, clean gown, cleaning supplies, and his eczema medication." (*Id*.)

On January 5, 2020, Plaintiff complained of a "rash that itches in genital and anal area." (Med. Records, Doc. No. 32-1, PageID 402-03.) Nurse Janie Sharp documented Plaintiff's condition as an "alteration in comfort [related to] rash/dryness [in] genitalia area." (*Id*. at PageID 403 (cleaned up).) She prescribed a 1% tolnaftate cream "to use immediately" as Plaintiff was "unable to have [the] tube of cream in [the dry] cell." (*Id*. (cleaned up).) Nurse Sharp advised Plaintiff to apply the cream to the affected area as well as he could, and to refrain from picking or scratching the affected area. (*Id*.)

Plaintiff acknowledges that he did receive his eczema medication. (Complaint, Doc. No. 9, PageID 84.) However, he states that it was ineffective because his eczema had worsened and "patches of rough, inflamed, and itchy skin covered his body and oozing, bloody sores and white blotchy marks covered his shins on both legs." (*Id*.)

On January 6, 2020, Plaintiff was handcuffed and escorted "barefoot[] and dressed in the same unclean gown" to Defendant Denney's office. (Complaint, Doc. No. 9, PageID 83.) Plaintiff complained again about "the unsanitary conditions of the dry cage,

about being deprived a shower," [and] about being denied his eczema medication." (*Id.*)

Defendant Denney stated that there was nothing he could do. (*Id.*)

Plaintiff was strip searched before being returned to his dry cage. (Complaint, Doc. No. 9, PageID 84.) He was required to "run his dirty fingers through his gums and spread his buttock cheeks," and then "put back on the same dirty, reeking orange suicide gown." (*Id.*) Plaintiff complained to a John Doe lieutenant, who stated: "Mr. Cool and Denney told everyone not to give you anything until you give up the drugs." (*Id.*)

On January 7, Nurse David Conley noted that Plaintiff had missed his ninth meal and concluded that Plaintiff was now on a hunger strike. (Med. Records, Doc. No. 32-1, PageID 399.) After that point, SOCF's medical staff monitored Plaintiff's health closely and were primarily concerned with his weight and nutrition.

On January 8 and 9, Plaintiff refused to have his vital signs taken and stated: "I'm cool." (Med. Records, Doc. No. 32-1, PageID 395-96.)

On January 10, Plaintiff met with a mental health professional. (Med. Records, Doc. No. 32-1 at PageID 393.) The consultation did not result in a mental health referral. (*Id.*) Plaintiff "denie[d] any needs or complaints," refused to have his vital signs taken, and stated: "I'm good today." (*Id.* at PageID 391.)

On January 11, a nurse conducted a physical examination, noted no distress, and reported that Plaintiff "[v]oices no needs or concerns at this time." (Med. Records, Doc. No. 32-1, PageID 389-90.)

On January 12, Plaintiff refused to have his vital signs taken. (Med. Records, Doc. No. 32-1, PageID 388.)

10

On January 13, 2020, Plaintiff states that he was moved from a dry cage to a dry cell. (Complaint, Doc. No. 9, PageID 85.) The plastic bunk bed had no mattress and was smeared with dried brown stains. (*Id*. at PageID 85-86.) There was a sink and toilet but no running water, and the toilet "was filled with urine and moldy, smelly food" that gave off a pungent and offensive odor. (*Id*.) There was spattered, dried food on the walls, sink, toilet and ceiling. (*Id*. at PageID 86.) Plaintiff complained about the unsanitary conditions but no one did anything to rectify them. (*Id*.)

After his first shower on January 13, 2020, Plaintiff was provided with a clean gown but was "placed back into the unsanitary dry cage." (Complaint, Doc. No. 9, PageID 85.) Bags of his stool were collected and placed in the hallway outside of his cell to be searched, creating an overwhelming odor. (*Id*.)

On January 13, Plaintiff refused to have his vital signs taken, refused to submit to a physical examination, waved the nurse away and stated: "I'm good." (Med. Records, Doc. No. 32-1, PageID 380-81 & 385.) Plaintiff stated that he "has no complaints at this time," denied experiencing any pain, and was advised "to notify nursing staff if he has any further medical needs." (*Id*. at PageID 371, 376 & 383.)

On January 14, Plaintiff refused to submit to a physical examination and to have his vital signs taken. He voiced no complaints or concerns, denied experiencing any pain, and stated: "I'm doing good." (Med. Records, Doc. No. 32-1, PageID 342, 346, 348-49, 353 & 356 (cleaned up).)

On January 15, Plaintiff refused to submit to a physical examination and to have his vital signs taken, voiced no complaints, denied experiencing any pain, and stated:

11

"I'm cool," "I'm good," and "I don't need anything done." (Med. Records, Doc. No. 32-1, PageID 319, 323-26, 330, 332 & 337.)

On January 16, Plaintiff again complained about having dry skin. (Med. Records, Doc. No. 32-1, PageID 310.) He told Nurse Nathan Ross that his legs were itching and requested lotion. (*Id*.) Nurse Ross examined Plaintiff's legs and observed dry skin with excoriation, and no signs or symptoms of infection. (*Id*.) He noted: "will DBN eucerin cream to use as directed on lower legs." (*Id*. at PageID 311.) Later that day, Plaintiff denied experiencing pain and told Nurse Laura Hart: "I'm doing okay, I need some cream for my legs." (*Id*. at PageID 308-09.) Nurse Hart noted that "[Nurse] Ross will order cream." (*Id*.) The records do not show when, if ever, Plaintiff received that cream.

Plaintiff began eating on January 16. (Med. Records, Doc. No. 32-1, PageID 299.)

On January 17, Plaintiff refused to submit to a physical examination and to have his vital signs taken, and denied experiencing any pain. He denied having any needs and stated: "I'm fine." Later in the day, Nurse David Conley noted that Plaintiff's "[s]kin is without obvious rashes or lesions." (Med. Records, Doc. No. 32-1, PageID 281-84, 286-87, 290-91.)

On January 18, 19, 20, and 21, Plaintiff refused to submit to a physical examination and to have his vital signs taken, voiced no complaints or concerns, denied experiencing any pain, and stated: "I am good," "I'm okay" and "I am fine." (Doc. No. 32-1, PageID 197-226, 230-46 & 249-65.)

On January 21, Nurse David Conley noted that Plaintiff's "[s]kin is without obvious rashes or lesions." (Med. Records, Doc. No. 32-1, PageID 197-209.)

12

Plaintiff was discharged from infirmary care on January 21, 2020. (Med. Records, Doc. No. 32-1, PageID 198.) He was moved from the dry cell to the restrictive housing block. (Complaint, Doc. No. 9, PageID 86-87.) He then filed various informal complaints and a grievance. (*Id*. at PageID 87.)

### 2. Informal Complaints and Grievance

Ohio inmates are required to follow a three-step process when filing a grievance. At Step One, the inmate must file an informal complaint within 14 days of the event that gave rise to the complaint. OAC 5120-9-31(J)(1). At Step Two, the inmate must file a notification of grievance within 14 days of the date of either a response to the informal complaint or a waiver of the informal complaint step. OAC 5120-9-31(J)(2). At Step Three, the inmate must file an appeal within 14 days of the date of the disposition of the grievance. OAC 5120-9-31(J)(3). A different process applies when grievances are filed against the prison warden. *See* OAC 5120-9-31(L).

#### *First ICR (January 27, 2020)*

On January 27, 2020, Plaintiff submitted an Informal Complaint Resolution ("ICR") that was received by the SOCF Warden's Office on February 3, 2020. (Grievance Docs., Doc. No. 32-5, PageID 505-06.) Plaintiff complained about being taken from a visit to a dry cell and being on watch for 21 days, and then being put in "the hole" without his belongings. *Id*. Chiefly, however, Plaintiff complained because Defendant Cool took his visitor's name off of his visitor list. *Id*. The responding staff member stated that Plaintiff was put on watch because of credible information that he

received drugs from his visitor, and had a positive drug screen two days later. *Id*. Plaintiff did not file a grievance or appeal. (Parker Decl., Doc. No. 32-5, PageID 514.)

### Second ICR (January 27, 2020)

On January 27, 2020, Plaintiff submitted a second ICR that was received by the SOCF Warden's Office on February 5, 2020. (Grievance Docs., Doc. No. 32-5, PageID 507-09.) Plaintiff complained that being in a dry cage with no shower made him scratch the dry skin on his legs and develop "jock itch," and the cream he was given did not work because he did not have a shower. (*Id*.) Plaintiff complained that he scratched the skin off of his legs due to bad medical attention and not having a shower. (*Id*.)

Nearly one year later, on January 7, 2021, Plaintiff filed a grievance against the SOCF Warden (who is not a defendant in this case) and Defendant Deputy Warden Cool. (Grievance Doc., Doc. No. 32-5, PageID 510.) Plaintiff stated that he filed his ICR on January 27, 2020. (*Id*.) The Chief Inspector denied Plaintiff's grievance on the grounds that it was untimely. (*Id*. at PageID 511.) Plaintiff did not file an appeal. (Parker Decl., Doc. No. 32-5, PageID 514.)

### Third ICR (February 9, 2020)

On February 9, 2020, Plaintiff submitted a third ICR in which he again complained about his dry skin. (Grievance Docs., Doc. No. 32-5 at PageID 512.) The responding official, Defendant HCA Goodman, informed Plaintiff that his complaint had no merit because the medical records indicated he had refused all assessments, including physical assessments, while he was in the dry cell. (*Id*.) Plaintiff did not file a grievance or appeal. (Parker Decl., Doc. No. 32-5, PageID 515.)

14

*Subsequent ICRs*

Plaintiff submitted additional ICRs dated August 11, 2020, October 26, 2020, and July 26, 2021, in which he complained about his skin condition and requested medical help. (Parker Decl., Doc. No. 32-5, PageID 100-03.)

### 3. Claims In This Case

Citing the Eighth Amendment to the U.S. Constitution, Plaintiff asserts that Defendants were deliberately indifferent to his complaints about unsanitary conditions, lack of a shower for fourteen days, and lack of his eczema medication. (Complaint, Doc. No. 9, PageID 87-88.) The Court will liberally construe Plaintiff's Complaint as asserting both Eighth Amendment conditions-of-confinement claims and Eighth Amendment deliberate-indifference-to-serious-medical-need claims against Defendants.

Plaintiff requests declaratory and injunctive relief, compensatory damages, and punitive damages. (Complaint, Doc. No. 9, PageID 88-89.)

## III. LAW AND ANALYSIS

In their Motion for Summary Judgment, Defendants Cool, Conley, Denney and Goodman argue that: (1) Plaintiff's claims are barred by his failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"); (2) Defendants are entitled to judgment on Plaintiff's Eighth Amendment conditions-of-confinement claims; and (3) Defendants are entitled to judgment on Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-need claims. The Court addresses each argument below.

### A.     PLRA Exhaustion Requirement

The PLRA requires all prisoners, including Plaintiff, to fully exhaust available institutional remedies before filing suit in federal court. 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is intended to provide "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009). Exhaustion is required before filing "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This means that the prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citation omitted). "Proper exhaustion [further] demands compliance with an agency's deadlines…." *Woodford*, 548 U.S. at 90.

An inmate's obligation to exhaust hinges on the availability of administrative remedies. *Ross v. Blake*, 578 U.S. 632, 636 (2016). There are three circumstances in which an administrative remedy, although officially available, is not capable of being

16

used to obtain relief: (1) an administrative procedure operates as a "simple dead end," with officers unable or consistently unwilling to provide relief to aggrieved inmates; (2) an administrative scheme is so opaque that it is practically incapable of use to the ordinary prisoner; and (3) a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through "machination, misrepresentation, or intimidation." *Id*. at 642-48.

Although "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court," a failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). For Defendants to be awarded summary judgment based upon this defense, the evidence of non-exhaustion must be "so powerful that no reasonable jury would be free to disbelieve it." *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023). Once Defendants raise and support this defense, the burden of proof shifts to Plaintiff, who must present evidence showing compliance with the PLRA's exhaustion requirement. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Here, Defendants pled the affirmative defense of failure to exhaust administrative remedies. (Cool Answer, Doc. No. 20, PageID 142; Conley, Denney & Goodman Answer, Doc. No. 22, PageID 149.) Defendants supported their Motion for Summary Judgment with the Declaration of SOCF Institutional Inspector Kevin Parker. (Parker Decl., Doc. No. 32-5, PageID 513-15.) Inspector Parker reviewed Plaintiff's grievance file and found no indication that Plaintiff filed a grievance and appeal for the First ICR (January 27, 2020), an appeal for the Second ICR (January 27, 2020), or a grievance or

17

appeal for the Third ICR (February 9, 2020). (*Id*. at PageID 514-15.) This evidence is consistent with Plaintiff's statement that he filed multiple ICRs and one grievance, without describing any appeal. (Complaint, Doc. No. 9, PageID 86-87.)

It is therefore undisputed that Plaintiff failed to exhaust his administrative remedies. The remaining question is whether Plaintiff provided evidence that creates a genuine issue of material fact as to whether the administrative remedies were effectively unavailable to him, thereby allowing his failure to exhaust to be excused.

Inspector Parker averred that the processes to exhaust administrative remedies were fully available to Plaintiff:

> 8. The grievance process does not operate as a simple dead end for inmates. Notifications of Grievances are fully investigated, and if warranted, they are granted.
>
> 9. The grievance process is not opaque. It is thoroughly explained during inmate orientation, the process is contained within the institutional handbook, and staff, including those working within the Institutional Inspector's office are available to answer any questions an incarcerated inmate may have regarding the process.
>
> 10. Prison administrators have not thwarted Plaintiff from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Plaintiff has used the grievance process on many occasions while housed at SOCF.
>
> ****
>
> 12. While Plaintiff was housed at SOCF, SOCF had a paper grievance system. The paper forms were available to each incarcerated individual on a daily basis, regardless of where the individual was housed. There were boxes of forms for each step of the process maintained in each housing unit. Incarcerated individuals could simply grab a from [sic] without obtaining the permission of anyone.
>
> 13. All documents for the grievance process were available to Plaintiff during his time at SOCF.

18

(Parker Decl., Doc. No. 32-5, PageID 514.)

In his Response to the Motion for Summary Judgment, however, Plaintiff states that he asked SOCF officers "many times for a grievance form," implying that he was unable to obtain one. (Doc. No. 39, PageID 870.) Plaintiff also submitted copies of numerous "kites" showing that he repeatedly requested copies of ICR or grievance forms. (Doc. No. 39-5, PageID 887-88, 891-92, 895-98, 900 & 904-07.)

The undersigned finds that this evidence is sufficient to create a genuine issue of material fact on the issue of whether administrative remedies were available to Plaintiff. *See Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) (reversing award of summary judgment based upon PLRA exhaustion where plaintiff claimed she was not provided access to grievance forms); *Lamb v. Kendrick*, 52 F.4th 286, 297 (6th Cir. 2022) ("[A]dministrative remedies are not 'available' if prison employees refuse to provide inmates with necessary grievance forms when requested."). Therefore, the undersigned concludes that Defendants are not entitled to summary judgment based upon the affirmative defense of PLRA exhaustion.

### B. Eighth Amendment Conditions-Of-Confinement Claims

As noted above, Defendants may only be held liable under Section 1983 for their own actions. *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Before addressing the merits of Plaintiff's Eighth Amendment conditions-of-confinement claims, the Court will consider which Defendants are properly subject to such a claim.

Plaintiff averred that Defendants Cool and Denney heard and refused to respond to his complaints about his conditions of confinement and his requests for a shower, hygiene

items, and other necessities. (Complaint, Doc. No. 9, PageID 82.) These two individuals
are therefore proper Defendants to this claim. Plaintiff did not, however, aver that
Defendants Goodman and Conley heard and refused to respond to his complaints and
requests.[3] Accordingly, the undersigned **RECOMMENDS** that Defendants Goodman
and Conley be awarded summary judgment on Plaintiff's Eighth Amendment conditions-
of-confinement claims. The undersigned will now consider whether Defendants Cool and
Denney are entitled to summary judgment on these claims.

### 1. Legal standard

Prison officials must "provide humane conditions of confinement" and "ensure
that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v.
Brennan*, 511 U.S. 825, 832 (1994). Nevertheless, "[t]he Constitution does not mandate
comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "[n]ot every
unpleasant experience a prisoner might endure while incarcerated constitutes cruel and
unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832
F.2d 950, 954 (6th Cir. 1987). Instead, "extreme deprivations are required to make out a
conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty
that criminal offenders pay for their offenses against society,'" *Hudson v. McMillan*, 503
U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

An Eighth Amendment conditions-of-confinement claim includes objective and
subjective components. The objective component requires Plaintiff to show that the

---

[3] The Court will consider Plaintiff's requests for eczema medication and skin cream in the context of his deliberate-indifference-to-serious-medical-need claims.

alleged harm was "objectively, sufficiently serious" and denied him "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citation omitted). Stated another way, Plaintiff must allege and prove facts that establish an objectively intolerable risk of serious harm. *Id*. at 842, 846 & n.9.

The subjective component of this claim requires proof that Defendants acted with "deliberate indifference" to a substantial risk to Plaintiff's health or safety. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This standard requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Finally, conditions-of-confinement claims "are highly fact-specific" and "the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204 (6th Cir. 2017). Therefore, the Court should "consider the interrelationship between the severe conditions and their duration" when evaluating the merits of a conditions-of-confinement claim. *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

### 2.  Unsanitary conditions

"It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-cv-892, 2021 U.S. Dist. LEXIS 158500 (S.D. Ohio Aug. 23, 2021) (Bowman, M.J.). For example, requiring a prisoner to live in a cell with massive amounts

21

of feces covering all surfaces and to sleep in raw sewage violates the Eighth Amendment. *Taylor v. Riojas*, 592 U.S. 7, 7-8 (2020). But temporary or minor discomforts resulting from unsanitary conditions are unlikely to meet this standard. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Brown v. Mahlman*, No. 1:22-cv-239, 2022 U.S. Dist. LEXIS 228343, *10 (S.D. Ohio Dec. 19, 2022) (Marbley, D.J.) ("Courts have typically found that temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test"); *Figueroa v. Cty. of Rockland*, No. 16-cv-6519, 2018 U.S. Dist. LEXIS 112011 (S.D.N.Y. July 5, 2018) (allegations of feces/bodily fluids on the walls are insufficient to create a constitutional concern).

The unsanitary conditions that Plaintiff describes are unpleasant. Given the case law, however, and in view of the relatively short length of Plaintiff's detention (21 days), these conditions do not rise to the level of extreme deprivations that would allow Plaintiff to prevail on his Eighth Amendment claims. That is, these conditions do not constitute objectively serious harms and Plaintiff cannot show that Defendants Cool and Denney were deliberately indifferent to an excessive risk to his health and safety.

### 3. Lack of a mattress and bedding

"[A] short-term deprivation of . . . bedding . . . has not been found to violate the Eighth Amendment." *Watison v. Perry*, No. 23-5059, 2024 U.S. App. LEXIS 3674, *6 (6th Cir. Feb. 15, 2024). More specifically, the Sixth Circuit has held that being deprived of a mattress for a 14-day period does not violate the Eighth Amendment. *Jones v. Toombs*, No. 95-1395, 1996 U.S. App. LEXIS 6545 (6th Cir. Feb. 15, 1996). Therefore, while it was no doubt unpleasant for Plaintiff to sleep without a mattress for a 21-day

period, the undersigned concludes that this temporary condition does not rise to the level of the required extreme deprivation, and that the objective and subjective components of Plaintiff's Eighth Amendment conditions-of-confinement claim are not met.

### 4. Lack of water to wash hands, sanitizer wipes and hygiene items

The Sixth Circuit has held that "[t]he temporary denial of personal hygiene and cleaning supplies does not violate the Eighth Amendment." *Watison*, 2024 U.S. App. LEXIS 3674, *6; *accord Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[C]ourts have not found the objective components satisfied where the deprivation of hygiene items was temporary."); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("[D]eprivation of . . . personal hygiene items for a brief span of time …, i.e., only six days, is not actionable conduct.") Here, Plaintiff claims to have been without hygiene items and the ability to wash or sanitize his hands for 14 days, after which time he was able to take showers. This deprivation was understandably unpleasant and stressful, but under the case law the undersigned cannot conclude that it was extreme. And although Plaintiff states that the lack of sanitation exacerbated his skin condition, that medical condition is not considered to be an objectively serious condition, as explained below. Therefore, Plaintiff's inability to clean himself for 14 days does not constitute an objectively serious harm and Plaintiff cannot show that Defendants Cool and Denney were deliberately indifferent to an excessive risk to his health and safety.

### 5. Lack of undergarments & a clean gown

"[A] short-term deprivation of clothing . . . has not been found to violate the Eighth Amendment." *Watison*, 2024 U.S. App. LEXIS 3674, *6. Similarly, an allegation

23

that clothes are washed only every two weeks does not state a claim under the Eighth Amendment. *Newell v. Watson*, No. 1:14-cv-304, 2016 U.S. Dist. LEXIS 41054, *8 (E.D. Tenn. Mar. 29, 2016). Here, Plaintiff claims that for 14 days he was required to dress only in a "suicide gown," without any undergarments, and the gown was not cleaned. These conditions, while unpleasant and uncomfortable, do not rise to the level of an extreme deprivation, and they do not allow Plaintiff to establish the objective and subjective components of his Eighth Amendment claim.

### 6. Lack of a shower

"The denial of showers . . . for a short time . . . does not rise to the level of cruel and unusual punishment." *Watison*, 2024 U.S. App. LEXIS 3674, *6. *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (denial of a shower for six days not sufficient to state an Eighth Amendment claim); *Farmer v. Parker*, No. 2:21-cv-152, 2022 U.S. Dist. LEXIS 25962, *4 (E.D. Tenn. Feb. 14, 2022) (deprivation of a shower for a week did not violate the Constitution). Here, Plaintiff was denied a shower for 14 days. Although this is a longer period of time than is countenanced by the cited cases, the undersigned cannot ascertain a reason why a 14-day period without a shower would rise to the level of an extreme deprivation when a 6-day period does not do so. Further, although Plaintiff complains that the lack of a shower made his eczema medication less effective, this circumstance (while uncomfortable) is not an objectively serious medical condition, as explained below. Therefore, Plaintiff cannot prevail on this claim.

24

### 7. Lack of running water (i.e., a dry cell)

This Court has held that placement in a cell without running water (i.e., a dry cell) for a fourteen-day period does not violate the Eighth Amendment. *Taper v. Branch*, No. 1:23-cv-806, 2024 U.S. Dist. LEXIS 100926, *24, 26 (S.D. Ohio June 6, 2024) (Jolson, M.J.). *Accord Wiley v. Ky. Dep't of Corr.*, No. 11-97, 2012 U.S. Dist. LEXIS 166385 (E.D. Ky. Nov. 21, 2012) (holding that inmate's placement in a "dry cell" with no running water did not state a constitutional claim because the discomforts the inmate experienced lasted for only 14 days). Accordingly, the undersigned concludes that this condition also does not provide a basis for Plaintiff to prevail on his claim.

### 8. Lack of a flushable toilet

The Sixth Circuit has held that it does not "violate[] the Eighth Amendment to require prisoners to use nonflushable toilets on occasion." *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *accord Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 U.S. App. LEXIS 29997, *6 (6th Cir. Nov. 12, 1999) ("[T]he Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets."). Therefore, the fact that Plaintiff was required to use nonflushable toilets for a temporary period of time does not violate the Eighth Amendment.

In sum, while the conditions that Plaintiff endured while housed in a dry cell were unpleasant and uncomfortable, they do not rise to the level of a constitutional violation. The undersigned therefore **RECOMMENDS** that Defendants Cool and Denney also be awarded summary judgment on Plaintiff's Eighth Amendment conditions-of-confinement claims.

C.     **Eighth Amendment Deliberate-Indifference-To-Serious-Medical-Need Claims**

Before addressing the merits of Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-need claims, the Court will again consider which Defendants are properly subject to such a claim.

The only Defendant who was directly involved with Plaintiff's medical treatment was Defendant Conley. Although Defendant Goodman is alleged to be the Health Care Administrator, she cannot be held liable under Section 1983 for the conduct of her subordinates unless she participated in some way with that conduct. *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (plaintiff suing a supervisor under Section 1983 "must show that [the supervisor] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). There is no such evidence here. Instead, Defendant Goodman's sole affirmative act was her denial of Plaintiff's ICR (Grievance Docs., Doc. No. 32-5 at PageID 512), which occurred after Plaintiff had been removed from the dry cell. There is no evidence that Defendant Goodman was previously aware of Plaintiff's complaints and deliberately ignored them. Therefore, she cannot be held liable under the Eighth Amendment. *See Reese v. Bolm*, No. 21-1215, 2021 U.S. App. LEXIS 30416, *5-6 (6th Cir. Oct. 12, 2021).

Accordingly, the undersigned **RECOMMENDS** that Defendants Cool, Denney and Goodman be awarded summary judgment on Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-need claims. The undersigned will now consider whether Defendant Conley is entitled to summary judgment on this claim.

26

### 1. Legal standard

The government is "obligated to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Moreover, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward" an inmate's "serious medical needs." *Reilly v. Valdamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (citations omitted). To state an Eighth Amendment claim concerning denial of medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 102.

Specifically, a prison official may only be held liable for denying proper medical care if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Plaintiff must allege that prison officials denied his reasonable requests for medical care when such need was obvious, and when he was susceptible to undue suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

Like the Eighth Amendment conditions-of-confinement claim, a deliberate-indifference-to-serious-medical-need claim "contains both an objective component—a 'sufficiently serious medical need'—and a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citations omitted). To satisfy the objective component, a plaintiff must prove "that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Id*.

(citations omitted). The plaintiff must also show "a sufficiently serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).

The subjective component requires a plaintiff to show "that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (citations omitted). A defendant has a "sufficiently culpable state of mind" if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, the official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The Sixth Circuit has generally applied a recklessness standard to this component. *Id.* (citations omitted).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Westlake*, 537 F.2d at 860-61 n.5. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims that sound in state tort law." *Id.*; *accord Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) ("[A] difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment … does not amount to an Eighth Amendment claim."). If medical assistance has been rendered, it must be so "woefully inadequate as to amount to no treatment at all" in order to give rise

28

to a cause of action under Section 1983. *Westlake*, 537 F.2d at 860-61 n.5. Similarly, alleged negligence in diagnosing or treating medical conditions is not actionable under Section 1983. *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860-61 n.5. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

### 2. Lack of eczema medication and skin cream

Plaintiff claims that Defendant Conley did not provide sufficient medical care for his eczema and skin condition. "Multiple courts . . . have concluded that dermatological conditions like Plaintiff's eczema are simply not sufficiently serious as to implicate the Eighth Amendment." *Williams v. Coleman*, No. 1:23-cv-646, 2023 WL 4861740, *4 (W.D. Mich. July 31, 2023) (collecting cases). Even when the skin condition involves rashes and itching, it does not constitute a serious medical need for purposes of the Eighth Amendment. *Owusu v. Michigan Dep't of Corr. Pain Mgmt. Comm.*, No. 16-cv-12490, 2019 WL 6139486, *13 (E.D. Mich. July 19, 2019) (collecting cases).

Accordingly, while the undersigned does not discount the discomfort that Plaintiff claims to have endured because of his skin condition, it simply does not rise to the level of an Eighth Amendment claim. In addition, there is no evidence that Defendant Conley was deliberately indifferent to Plaintiff's complaints. Therefore, the undersigned **RECOMMENDS** that Defendants Conley be awarded summary judgment on Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-need claim.

## IV.    CONCLUSION

For the reasons stated, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 32) be **GRANTED** in its entirety as to Defendants Cool, Denney, Goodman and Conley, and that all claims against them be **DISMISSED WITH PREJUDICE.**

**IT IS SO RECOMMENDED**.

*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### Notice of Procedure on Objections

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Order and Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50

(6th Cir. 1981).